## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICK ROSSIGNOL, Individually
and as a Limited Partner in
RUNNING PUMP ASSOCIATES, L.P.
on behalf of
RUNNING PUMP ASSOCIATES, L.P.
666 Greenwich Street, Apt. 936
New York, NY  10014,
           Plaintiff

vs.

RUNNING PUMP ASSOCIATES, L.P.         CIVIL ACTION NO.
c/o Lee Blatt, General Partner
734 Yocum Pond Road
Becket, MA 01223

     and                          JURY TRIAL DEMANDED

LEE BLATT
734 Yocum Pond Road
Becket, MA 01223,
           Defendants

## COMPLAINT

## PARTIES

1.     Plaintiff PATRICK ROSSIGNOL (hereinafter referred to as "Rossignol")
is an adult individual who resides at the address set forth above.

2.     Defendant RUNNING PUMP ASSOCIATES, L.P. (hereinafter referred to
as "RPA") is a limited partnership organized and existing under the laws of the
Commonwealth of Pennsylvania with a business address of 471 N. Arrowhead Trail,
Vero Beach, FL  32963.

3.     Defendant LEE BLATT (hereinafter referred to as "Blatt") is an adult
individual who resides at the address set forth above.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the parties are citizens of different States.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions occurred in the Eastern District of Pennsylvania.

**6.**     A trial by jury is demanded.

## FACTS

7.     In December 1996, Blatt and John Thonet were the sole partners in Running Pump Associates, a Pennsylvania general partnership.

8.     On or about December 26, 1996, Blatt and John Thonet converted the RPA general partnership into a limited partnership in which Blatt was named the general partner.

9.     As the general partner of RPA, Blatt is required to act in good faith, in a manner he reasonably believes to be in the best interests of RPA and with such care, including reasonable inquiry, skill and diligence that a person of ordinary prudence would use under similar circumstances.

10.     At the same time, Allyson Gerber, Randi Rossignol, Patrick Rossignol, Henry Rossignol, Max Rossignol, Kathi Thonet, John Thonet, Hannah Thonet, Rebecca Thonet and Sydelle Blatt became limited partners in RPA.

11.     According to Schedule "A" of the Amended and Restated Partnership Agreement of RPA (hereinafter referred to as "RPA Agreement") which is attached

hereto as Exhibit "A," Blatt's capital contribution to RPA was $15,000.00, Allyson Gerber contributed $120,000.00, each of the Rossignols contributed $75,000.00, each of the Thonets contributed $75,000.00 and Sydelle Blatt contributed $15,000.00, for a total capitalization of $750,000.00.

12.     According to Schedule "B" of the RPA Agreement, Blatt was allocated 2% of the profit and loss, Allyson Gerber was allocated 16% of the profit and loss, each of the Rossignols was allocated 10% of the profit and loss, each of the Thonets was allocated 10% of the profit and loss and Sydelle Blatt was allocated 2% of the profit and loss.

13.     Allyson Gerber, Randi Rossignol and Kathi Thonet are the children of Lee and Sydelle Blatt.

14.     Patrick Rossignol is Randi Rossignol's ex-husband and Henry Rossignol and Max Rossignol are the children of Patrick and Randi Rossignol.

15.     John Thonet is Kathi Thonet's husband and Hannah Thonet and Rebecca Thonet are the children of John and Kathi Thonet.

16.     RPA is the owner of the Western Corners Shopping Center in Lancaster, Pennsylvania.

17.     Western Corners occupies approximately 10 acres of land and consists of a free standing bank, a standalone restaurant, a gas station and a shopping mall with approximately 17 stores and adjacent parking.

18.     In addition to RPA, Blatt and/or the other limited partners of RPA control, among other entities, BFR # 1, LLC (a New York limited liability company formed on February 4, 2008), BFR # 2, LLC (a New York limited liability company formed on

February 4, 2008), Jane Development Associates, LLC (a New York limited liability company formed on February 20, 2008), Karal Associates, LLC (a New York limited liability company formed on February 20, 2008), Karal Associates II, LLC (a New York limited liability company formed on August 21, 2002), RAKA Associates, LLC (a New York limited liability company formed on September 15, 2008) and RSK Realty LLC (a New York limited liability company formed on August 6, 1999).

19.     Kathi Thonet and others also do business as Karal Associates, a fictitious name registered in 1987 with the Pennsylvania Department of State.

20.     Rossignol has never had an interest in BFR # 1, LLC, BFR # 2, LLC, Jane Development Associates, LLC, Karal Associates, LLC, Karal Associates II, LLC, RAKA Associates, LLC, RSK Realty LLC and/or any other entities owned or controlled by Blatt or RPA's other limited partners.

21.     Upon information and belief, in 2004, at Blatt's direction and with his authorization, RPA transferred $369,000.00 to Karal II Associates, the New York limited liability company, and/or Kathi Thonet d/b/a Karal Associates.

22.     Upon information and belief, in 2005, at Blatt's direction and with his authorization, RPA transferred $757,266.00 to Karal II Associates, the New York limited liability company, and/or Kathi Thonet d/b/a Karal Associates.

23.     Upon information and belief, in 2006, at Blatt's direction and with his authorization, RPA transferred $439,521.00 to Randi Rossignol.

24.     Upon information and belief, in 2006, at Blatt's direction and with his authorization, RPA transferred $51,599.00 to Kathi Thonet.

25.     Upon information and belief, in 2007, at Blatt's direction and with his authorization, RPA transferred $380,359.00 to Karal Associates II, the New York limited liability company, and/or Kathi Thonet d/b/a Karal Associates.

26.     Upon information and belief, in 2008, at Blatt's direction and with his authorization, RPA transferred $392,539.00 to Karal Associates I, Karal Associates II and/or Kathi Thonet d/b/a Karal Associates.

27.     Upon information and belief, in 2008, at Blatt's direction and with his authorization, RPA transferred $99,604.00 to RSK Realty.

28.     Upon information and belief, in 2008, at Blatt's direction and with his authorization, RPA transferred $112,000.00 to BFR # 1.

29.     Upon information and belief, in 2008, at Blatt's direction and with his authorization, RPA transferred $57,000.00 to Randi Rossignol.

30.     Upon information and belief, in 2008, at Blatt's direction and with his authorization, RPA transferred $33,500.00 to Hannah Thonet.

31.     Upon information and belief, none of the amounts transferred to Karal Associates I, Karal Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty and/or BFR # 1 were for payment of legitimate expenses incurred by RPA, and none were intended to be reasonable investments for the benefit of RPA and/or were intended to be the principal amount of loans made by RPA to Karal Associates I, Karal Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty and/or BFR # 1.

32.     The amount of money transferred by RPA to Randi Rossignol, Kathi Thonet and Hannah Thonet in 2006 and 2008 was more than the amount of RPA's profit to which each was entitled under the RPA Agreement.

33.     Upon information and belief, the excess amounts transferred to Randi Rossignol, Kathi Thonet and Hannah Thonet by RPA were not for the payment of legitimate expenses incurred by RPA, were not intended to be a reasonable investment for the benefit of RPA and were not intended to be the principal amount of a loan made by RPA to Randi Rossignol, Kathi Thonet and/or Hannah Thonet.

34.     On or about May 17, 2007 Randi Rossignol began divorce proceedings against Rossignol in the Supreme Court of the State of New York, County of Westchester.

### COUNT I
### BREACH OF FIDUCIARY DUTY
### Rossignol v. Running Pump Associates, L.P. and Lee Blatt

35.     Plaintiff incorporates paragraphs 1 through 34 as though fully set forth at length.

36.     Beginning in 2004, Blatt failed to act in the best interests of RPA and failed to act with the care, skill and diligence of a person of ordinary prudence, when, as RPA's general partner, he:

    a.  Authorized and directed the transfer of RPA's assets to Karal Associates I, Karal Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty BFR # 1, Randi Rossignol, Kathi Thonet and Hannah Thonet for reasons other than the payment of legitimate expenses incurred by RPA, as reasonable investments for the benefit of RPA and its limited partners or as the principal amount of loans made by RPA;

    b.  Authorized and directed the transfer of RPA's assets to Karal Associates I, Karal Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty,

6

BFR # 1 and Randi Rossignol to pay for legal fees and expenses, unrelated

to the business of RPA, incurred by Randi Rossignol in the divorce

litigation with Rossignol and

c. Authorized and directed the transfer of RPA's assets to Karal Associates I,

Karal Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty

BFR # 1, Randi Rossignol, Kathi Thonet and Hannah Thonet to pay for

personal obligations of Blatt, Randi Rossignol, Kathi Thonet and Hannah

Thonet unrelated to the business of RPA.

37.     The improper transfer by Blatt of over $2,750,000.00 in assets from RPA

to other entities controlled by Blatt and/or the other limited partners of RPA has

interfered with RPA's ability to operate and maintain the Western Corners Shopping

Center and has deprived some of RPA's limited partners of amounts properly due them

under the RPA Agreement.

38.     By letter dated June 21, 2013, Rossignol, as a limited partner with a 10%

interest in RPA, demanded that within thirty (30) days of June 21, 2013, Blatt exercise

every available and appropriate action to recover from Karal Associates I, Karal

Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty BFR # 1, Randi

Rossignol, Kathi Thonet and Hannah Thonet the assets improperly transferred to them by

RPA.

39.     Upon information and belief, as of the date of the filing of this Complaint,

Blatt has taken no steps to recover the amounts improperly transferred by RPA to Karal

Associates I, Karal Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty, BFR

# 1, Randi Rossignol, Kathi Thonet and/or Hannah Thonet.

**WHEREFORE,** Plaintiff PATRICK ROSSIGNOL as a limited partner in RUNNING PUMP ASSOCIATES, L.P. and on behalf of RUNNING PUMP ASSOCIATES, L.P. respectfully requests that this Court:

    a. Prohibit any further distribution and/or transfer of RUNNING PUMP ASSOCIATES, L.P. assets to Karal Associates I, Karal Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty, BFR # 1, Randi Rossignol, Kathi Thonet, Hannah Thonet and/or to other entities owned or controlled by RUNNING PUMP ASSOCIATES, L.P.'s limited or general partners;

    b. Prohibit any further distribution and/or transfer of RUNNING PUMP ASSOCIATES, L.P. assets for purposes other than the ongoing operation of the business of RUNNING PUMP ASSOCIATES, L.P. ;

    c. Order an accounting of the finances of RUNNING PUMP ASSOCIATES, L.P. from January 1, 2004 through the present date by an independent accounting professional using Generally Accepted Accounting Principles to determine the recipient and amount of all payments and/or transfers made by RUNNING PUMP ASSOCIATES, L.P. and

    d. Enter judgment in favor of RUNNING PUMP ASSOCIATES, L.P. and against Defendant LEE BLATT in an amount equal to the value of any assets found to have been improperly transferred by RUNNING PUMP ASSOCIATES, L.P. to Karal Associates I, Karal Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty, BFR # 1, Randi Rossignol, Kathi Thonet, Hannah Thonet and/or for purposes other than the ongoing

operation of the business of RUNNING PUMP ASSOCIATES, L.P. to

other entities, including entities owned or controlled by RUNNING PUMP

ASSOCIATES, L.P's limited or general partners, plus Plaintiff's

attorney's fees and costs and the cost of the accounting and

  e.  Order such other relief that this Court deems just and proper.

### COUNT II
### BREACH OF FIDUCIARY DUTY
### Rossignol v. Lee Blatt

40.  Plaintiff incorporates paragraphs 1 through 39 as though fully set forth at length.

41.  Section 4.03B of the RPA Agreement provides that "[n]o funds of the Partnership shall be commingled with the funds of any other person, and the General Partner shall not employ, or permit any other person to employ such funds in any manner except for the benefit of the Partnership."

42.  Section 4.04C of the RPA Agreement provides that "[T]he General Partner shall be under a fiduciary duty and obligation to conduct the business and affairs of the Partnership in the best interests of the Partnership, including the safekeeping and use of all Partnership funds and assets…"

43.  As a direct result of the transfers by Blatt of RPA funds to Karal Associates I, Karal Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty, BFR # 1, Randi Rossignol, Kathi Thonet and Hannah Thonet, as well as for purposes other than the ongoing operation of the business of RPA, the funds of RPA have been commingled with the funds of other persons and entities.

44.     As a direct result of the transfers by Blatt of RPA funds to Karal Associates I, Karal Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty, BFR # 1, Randi Rossignol, Kathi Thonet and Hannah Thonet as well as for purposes other than the ongoing operation of the business of RPA, Blatt has permitted RPA's funds to be used other than for the sole benefit of the limited and general partners of RPA.

45.     As a direct result of the transfers by Blatt of RPA funds to Karal Associates I, Karal Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty, BFR # 1, Randi Rossignol, Kathi Thonet and Hannah Thonet as well as for purposes other than the ongoing operation of the business of RPA, Blatt has breached his fiduciary duty and obligation to Rossignol as a limited partner in RPA to conduct the business and affairs of RPA in the best interests of the limited and general partners of RPA.

46.     A portion of the RPA assets transferred by Blatt to Karal Associates I, Karal Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty, BFR # 1, Randi Rossignol, Kathi Thonet and Hannah Thonet, comprise profits earned by RPA and in which Rossignol has a 10% interest pursuant to the RPA Agreement.

47.     As a result of Blatt's actions, Rossignol has been deprived of the full amount of the profit to which he is entitled pursuant to the RPA Agreement.

**WHEREFORE,** Plaintiff PATRICK ROSSIGNOL respectfully requests that this Court:

  a.  Prohibit any further distribution and/or transfer of RUNNING PUMP ASSOCIATES, L.P. assets to Karal Associates I, Karal Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty, BFR # 1, Randi Rossignol, Kathi Thonet, Hannah Thonet and/or to other entities owned or

controlled by RUNNING PUMP ASSOCIATES, L.P.'s limited or general partners;

b.  Prohibit any further distribution and/or transfer of RUNNING PUMP ASSOCIATES, L.P. assets for purposes other than the ongoing operation of the business of RUNNING PUMP ASSOCIATES, L.P. ;

c.  Order an accounting of the finances of RUNNING PUMP ASSOCIATES, L.P. from January 1, 2004 through the present date by an independent accounting professional using Generally Accepted Accounting Principles to determine the recipient and amount of all payments and/or transfers made by RUNNING PUMP ASSOCIATES, L.P.;

d.  Enter judgment in favor of PATRICK ROSSIGNOL and against Defendant LEE BLATT in an amount equal to PATRICK ROSSIGNOL's share of the profits of RUNNING PUMP ASSOCIATES, L.P. included in the funds transferred by LEE BLATT Karal Associates I, Karal Associates II, Kathi Thonet d/b/a Karal Associates, RSK Realty, BFR # 1, Randi Rossignol, Kathi Thonet, Hannah Thonet and/or for purposes other than the ongoing operation of the business of RUNNING PUMP ASSOCIATES, L.P. to other entities owned or controlled by RUNNING PUMP ASSOCIATES, L.P.'s limited or general partners, plus Plaintiff's

attorney's fees and costs and the cost of the accounting and

e.  Order such other relief that this Court deems just and proper.

**DESSEN, MOSES & ROSSITTO**

Dated: July 24, 2013                    By: _____

DAVID S. DESSEN, ESQUIRE
Attorney ID # 17627
Attorney for Plaintiff

600 Easton Road
Willow Grove, PA  19090
(215) 496-2902
deessen@dms-lawyer.com

# EXHIBIT "A"

d:\nck\running.arp

# RUNNING PUMP ASSOCIATES, L.P.
## AMENDED AND RESTATED PARTNERSHIP AGREEMENT

THIS AMENDED AND RESTATED PARTNERSHIP AGREEMENT is made as of the 26th day of December, 1996 by and among LEE BLATT (hereinafter referred to as "Blatt" or the "General Partner") and the individuals reflected on the attached schedule (hereinafter referred to as the "Limited Partners") (the General Partner and the Limited Partners are hereinafter sometimes collectively referred to as the "Partners").

WHEREAS, Running Pump Associates is a Pennsylvania general partnership formed pursuant to a partnership agreement dated May 26, 1987 as amended and restated on January 3, 1992 (the "General Partnership"); and

WHEREAS, Blatt and John Thonet ("Thonet") are the sole partners of the General Partnership; and

WHEREAS, Blatt and Thonet desire to convert the General Partnership into a Pennsylvania limited partnership (the "Partnership") pursuant to the provisions of this Amended and Restated Limited Partnership Agreement for the purposes set forth herein; and

WHEREAS, Blatt shall be the sole general partner of the Partnership and Thonet shall be a limited partner of the Partnership; and

WHEREAS, initially Blatt shall also be a limited partner in the Partnership but will be deemed to assign his limited partner interest to the limited partners, other than John Thonet, executing this Agreement and complying with all applicable provisions thereof; and

WHEREAS, the parties desire to amend and restate the terms of the Partnership.

NOW, THEREFORE, in consideration of the mutual covenants and conditions herein contained, and for other good and valuable consideration, receipt of which is hereby acknowledged, it is mutually agreed as follows:

## ARTICLE I

### FORMATION AND TERM OF PARTNERSHIP

1.01    Conversion, Name, Purpose

    (a) Blatt and Thonet hereby convert the General Partnership to a Limited Partnership pursuant to the Pennsylvania Revised Limited Partnership Act (including, without

9

limitation, thereof) for making such investments as the General Partner shall from time to time determine, under the name RUNNING PUMP ASSOCIATES, L.P., or such other name as the General Partner shall from time to time determine. The purpose of the Partnership is to make investments of all types and to acquire, own, hold, invest in, improve, develop, operate, manage, administer, sell, convey, assign, lease, exchange, transfer, dispose of, pledge, mortgage, deal in, and loan or borrow money upon, alone or in conjunction with others, all types of property whether real, personal, tangible or intangible.

(b)   Initially Blatt shall be a limited partner in the Partnership but will be deemed to assign his limited partner interest to the Limited Partners, other than John Thonet, executing this Agreement and complying with all applicable provisions thereof. By executing this Agreement, each such Limited Partner shall be deemed to accept the assignment of his or her respective limited partner interest from Blatt and no further documentation shall be necessary to document such assignment.

1.02   Place of Business

The principal place of business of the Partnership will be c/o LEE BLATT, 734 Yokum Pond Road, Becket, MA 01223 or at such other place or places as may be agreed upon from time to time by the General Partner.

1.03   Term of Partnership

The Partnership shall continue until June 30, 2046, unless sooner terminated upon the earliest to occur of:

(1)   the dissolution of the Partnership by law; or

(2)   dissolution at any time determined by the General Partner; or

(3)   the bankruptcy or withdrawal of the General Partner; or

(4)   the sale or other disposition at one time of all or substantially all the Partnership assets.

1.04   Certificate of Limited Partnership

The General Partner will execute, acknowledge and deliver a Certificate of Limited Partnership for the Partnership.

1.05   Filing and Publication

The General Partner shall cause the Certificate referred to in Section 1.04 to be filed in the Department of State for the Commonwealth of Pennsylvania, and promptly

thereafter, the General Partner shall arrange for the publication of such Certificate, if required by the Revised Limited Partnership Act of the Commonwealth of Pennsylvania.

### 1.06   Power of Attorney

Each Limited Partner hereby irrevocably constitutes and appoints the General Partner his true and lawful attorney, in his name, place and stead, to make, execute, sign, acknowledge and file:

    (a)    any instrument to amend or revoke the Certificate of Limited Partnership pursuant to the provisions of the Revised Limited Partnership Act of the Commonwealth of Pennsylvania;

    (b)    such other certificates or instruments as may be required by law or appropriate to the conduct of the Partnership business and the exercise by the General Partner of its authority under this Agreement, including, without limitation, deeds of conveyance of any interest of the Partnership in real property.

Each Limited Partner shall execute such instruments as the General Partner may request in order to give evidence of the granting of this power of attorney, whether by executing a separate counterpart thereof or otherwise.

### 1.07   Duration of Power of Attorney

It is expressly intended by each of the Limited Partners that the power of attorney granted under Section 1.06 is coupled with an interest. Such power of attorney shall survive the assignment by any Limited Partner of the whole or any portion of his Partnership interest until such time as all actions necessary to effect the substitution of the assignee thereof as a substituted Limited Partner shall have been performed, and shall also, to the extent permitted by law, survive the merger, bankruptcy, receivership, or death or disability of a Limited Partner.

## ARTICLE II

### CAPITAL CONTRIBUTIONS

### 2.01   Contributions

The capital of the Partnership shall consist of the amount set forth in Schedule "A" opposite the name of each Partner. The general partner may contribute additional property to the Partnership in exchange for additional limited partnership interest.

3

11

2.02   Capital Accounts

A separate capital account shall be maintained for each Partner.  No Partner shall withdraw any part of his capital account (including any net profits transferred thereto) except with the approval of the General Partner.  The capital of each Partner shall consist of his original capital contribution as set forth in Schedule A increased by (a) his additional capital contributions, (b) his share of any realized income and gains transferred to his capital account and (c) in the case of a general partner his share of Partnership liabilities for which he is personally liable; decreased by (a) distributions of Partnership capital and (b) his share of realized Partnership losses, and (c) in the case of a general partner any reductions in Partnership liabilities for which he is personally liable.

2.03   Interest

No interest shall be paid on any capital accounts in the Partnership.

## ARTICLE III

## PROFIT AND LOSS; DISTRIBUTIONS

3.01   Allocations of Profits and Losses

(a)   The profits and losses of the Partnership for Federal income tax purposes shall be determined and allocated with respect to each calendar year of the Partnership as of, and within 90 days after, the end of such calendar year.

(b)   Except as provided in Subsection (c) and Sections 3.02 and 3.03, all profits and losses shall be allocated (and credited), as of the date at which profits and losses are determined, two percent (2%) to the General Partner and ninety-eight percent (98%) among all the Limited Partners according to the profit-sharing percentages set forth on Schedule B hereto for accounting, bookkeeping and Federal income tax purposes.

(c)   Any gain or loss, solely for Federal income tax purposes, realized in connection with the sale or other disposition of all or substantially all of the Partnership's real property in one transaction or in a series of related transactions shall be allocated (and credited) as follows:

(i)   Gain from such event shall first be allocated to and among the Partners having deficit balances in their Capital Accounts in proportion to, and to the extent of, such deficit balances;

4

12

(ii)   The remaining gain, if any, from such event shall be allocated to and amount the Partners as provided in subsection (b) of this Section 3.01 after first taking into account any allocation under subparagraph (i);

(iii)  Loss from such event shall first be allocated to and among the Partners having positive balances in their Capital Accounts in proportion to, and to the extent of, such positive balances.

(iv)   The remaining loss, if any, shall be allocated to and among the Partners as provided in subsection (b) of this Section 3.01 after first taking into account any allocation under sub-paragraph (iii).

3.02   Limited Partner's Liability for Losses

The liability of each of the Limited Partners for the losses of the Partnership shall in no event exceed in the aggregate the amount of their contributions to the capital of the Partnership and any additions to capital as described in Section 2.02.

3.03   Distributions

(a)   Distributions of Income
The Partnership shall make distribution to the Partners of income at such times and in such amounts as the General Partner deems advisable.

(b)   Distributions Upon Sale

Notwithstanding the provisions of Subsection (a) of this Section 3.03, in the event of a sale or other disposition of all or substantially all of the Partnership's property, the net proceeds arising therefrom, after payment of or provision for liabilities to creditors of the Partnership, shall be distributed to and among the Partners in proportion to, and to the extent of, the positive balances in their Capital Accounts.

## ARTICLE IV

## RIGHTS, POWERS AND DUTIES OF THE GENERAL PARTNER

4.01   Management and Control of the Partnership

(a)   Subject to the consent of the Limited Partners where required by this Agreement, the General Partner, within the authority granted to it under, and in accordance with the provisions of, this Agreement, shall have the full and exclusive right to manage and control the business and affairs

5

of the Partnership and to make all decisions regarding the business of the Partnership and shall have all of the rights, powers and obligations of a general partner of a limited partnership under the laws of the Commonwealth of Pennsylvania.

(b)     In order to expedite the handling of the Partnership's business and affairs, it is understood that any document executed by the General Partner while acting in the name and on behalf of the Partnership shall be deemed to be the action of the Partnership as to any third parties (including the Limited Partners as third parties for such purpose).

(c)     The Limited Partners shall not participate in the management of, or have any control over, the Partnership's business, nor shall the Limited Partners have the power to represent, act for, sign for or bind the General Partner or the Partnership, but the Limited Partners shall nevertheless have the rights provided herein.  The Limited Partners hereby consent to the exercise by the General Partner of the powers conferred on it by this Agreement.

(d)     The General Partner is hereby designated as the "tax matters partner" under the Internal Revenue Code.  The Partnership hereby agrees to indemnify and hold harmless the General Partner from and against any claim, loss, expense, liability, action, or damage resulting from its acting, or its failure to take any action, as the "tax matters partner", provided that any such action or failure to act does not constitute gross negligence or willful misconduct.

4.02   Authority of the General Partner

In addition to any other rights and powers which the General Partner may possess under this Agreement and by operation of law, the General Partner shall, except to the extent otherwise provided herein, have all specific rights and powers required or appropriate to the management of the Partnership business which, by way of illustration but not by way of limitation, may include the following rights and powers:

(i)     to execute, in furtherance of any and all of the purposes of the Partnership, any and all agreements, contracts, documents, certifications, and other instruments deemed by the General Partner to be necessary or appropriate in connection with the business of the Partnership;

(ii)    to protect and preserve the title and interest of the Partnership with respect to the assets of the Partnership, to collect all amounts due to the Partnership and otherwise to enforce all rights of the Partnership, and in

6

14

that connection to obtain counsel and institute suits and proceedings in the name and on behalf of the Partnership;

(iii)    to the extent that funds of the Partnership are available, to pay all debts and obligations of the Partnership and to make all distributions periodically to the Partners in accordance with the provisions of this Agreement;

(iv)    to open separate bank accounts for the Partnership with such bank or banks as the General Partner may from time to time select, and to designate and change signatories on such accounts;

(v)    to employ on behalf of the Partnership such persons as the General Partner shall deem advisable in the operation and management of Partnership business, including, without limitation, accountants, attorneys and other experts, on such terms and for such reasonable compensation as the General Partner shall consider advisable;

(vi)    to advance funds to the Partnership.

4.03   <u>Restrictions on the Authority of the General Partner</u>

A.    Without the consent of the Limited Partners in each instance, the General Partner shall not have the authority to:

(i)    do any act in contravention of this Agreement;

(ii)    do any act which would make it impossible to carry on the ordinary business of the Partnership;

(iii)    confess a judgment against the Partnership;

(iv)    possess Partnership property, or assign, pledge or hypothecate the rights of the Limited Partners in specific Partnership property, for other than a Partnership purpose;

(v)    knowingly perform any act that would subject a Limited Partner to liability as a general partner in any jurisdiction.

B.    Notwithstanding any other provision of this Agreement, no funds of the Partnership shall be commingled with the funds of any other person, and the General Partner shall not employ, or permit any other person to employ such funds in any manner except for the benefit of the Partnership.

7

4.04  <u>Duties and Obligations of the General Partner</u>

A.     The General Partner shall take all action which may be reasonably necessary or appropriate for the continuation of the Partnership's valid existence as a limited partnership under the laws of the Commonwealth of Pennsylvania and for the acquisition and ownership of real property and the exercise of the powers and rights of the Partnership in accordance with the provisions of this Agreement and applicable laws and regulations.

B.     The General Partner shall devote to the Partnership such time as in his own judgement shall be necessary or appropriate to conduct the Partnership business and affairs in the best interest of the Partnership.

C.     The General Partner shall be under a fiduciary duty and obligation to conduct the business and affairs of the Partnership in the best interest of the Partnership, including the safekeeping and use of all Partnership funds and assets, whether or not in the immediate possession or control of the Partnership. The General Partner shall at all times act with integrity and good faith and exercise due diligence in all activities relating to the conduct of the business of the Partnership and in resolving conflicts of interest.

D.     The General Partner shall use its best efforts to maintain its net worth at a level which is sufficient to meet all requirements of currently applicable regulations and rulings of the Internal Revenue Service, if any, and, in addition, shall use its best efforts to meet any future requirements set by statute, the Internal Revenue Service or the courts, to insure that the Partnership will not fail to be classified for Federal income tax purposes as a partnership, rather than as an association taxable as a corporation, on account of the net worth of the General Partner.

E.     The General Partner shall prepare or cause to be prepared and shall file on or before the due date (or any extension thereof) any Federal, state or local tax returns required to be filed by the Partnership. The General Partner shall cause the Partnership to pay any tax payable by the Partnership from the assets of the Partnership, including but not limited to, any unincorporated business tax.

F.     The General Partner shall, from time to time, submit to any appropriate Federal or state securities administrator such documents, papers, statistics and reports as are required to be filed with or submitted to such state securities administrator.

G.     The General Partner shall use its best efforts to cause the Partnership to be formed, reformed, qualified to do business, or registered under any applicable assumed or fictitious name, statute or similar law, if such formation, reformation, qualification or registration is necessary in order to protect the limited liability of the Limited Partners or to permit the Partnership lawfully to own property or transact business.

8

H.     The General Partner shall cause the Partnership, if commercially feasible, to obtain and keep in force insurance of such types, in such amounts, on such terms and with such carriers, as will in his judgment, adequately protect the Partnership and its property.

4.05    Compensation of the General Partner

The General Partner shall receive no compensation for its duties hereunder.

4.06    Other Business of Partners

Any Partner may engage in or possess an interest in other business ventures of any kind, nature or description, independently or with others.  Neither the Partnership nor any Partner shall have any rights or obligations in or to such independent ventures or the income or profits or losses derived therefrom.

4.07    Indemnification of the General Partner

A.     The General Partner shall not be liable, responsible or accountable in damages or otherwise to the Partnership or any of the Partners for, and the Partnership shall indemnify the General Partner against and save it harmless from, any damage or expense (including reasonable attorneys' fees and any amounts expended in settlement of any claim) incurred by reason of any act or omission performed or made by any General Partner in a manner reasonably believed by such General Partner to be both within the scope of authority granted to the General Partner by this Agreement and in the best interests of the Partnership or the Limited Partners, provided that such damage or expense is not found by a court of competent jurisdiction upon entry of a final judgment to be the result of the fraud, gross negligence, material breach of fiduciary duty or willful misconduct of the General Partner and further provided that the satisfaction of any indemnification shall be from, and limited to, Partnership assets. The Limited Partners shall not have any personal liability whatsoever on account of the provisions of this Section 4.07.

B.     The General Partner shall be entitled to receive, upon application therefor, advances to cover the costs of defending any claim or action against it, provided that such advances shall be repaid to the Partnership, without interest, if such General Partner is found by a court of competent jurisdiction upon entry of a final judgment to have violated any of the standards set forth in the preceding Subsection A.  All rights of the General Partner to indemnification shall survive the dissolution of the Partnership and the withdrawal or removal of the General Partner, provided that a claim for indemnification hereunder is made by or on behalf of the Person seeking such indemnification prior to the time distribution upon liquidation of the assets of the Partnership is made pursuant to Section 9.02 hereof.

C.     The General Partner shall have the right and authority to require in all Partnership contracts that the General Partner will not be personally liable thereon and that the

9

person or entity contracting with the Partnership is to look solely to the Partnership and its assets for satisfaction.

4.08   Dealing With Related Persons

The General Partner, on behalf of the Partnership or for its own account, may employ a Partner or a person related to or affiliated with a Partner to render or perform a service, may contract to buy property from a Partner or such person, may enter into a partnership, limited partnership, joint venture, or other association, and may otherwise deal with such Partner or such person, provided, however, that if the General Partner employs for the Partnership, a Partner, or persons, firms, or corporations directly or indirectly related to any one or more of them, the charges made for services rendered and materials furnished by such Partner, persons, firms, or corporations are comparable to those charged by others of similar stature in the same line of business and not so related.

4.09   Voluntary Withdrawal or Transfer by a General Partner

A.   The General Partner shall have the right to retire as a General Partner and to propose a qualified person as a substituted General Partner.  For purposes of this Section 4.09, the term "qualified person" means a person who in the reasonable judgment of the retiring General Partner has the skill, knowledge and financial condition required to perform the duties of a General Partner.  If no alternate designation shall have been made, then with the consent of two-thirds (2/3) of the limited partners, such person shall be substituted General Partner.

B.   A retiring General Partner may transfer to a remaining or substituted General Partner such part of the retiring General Partner's Interest in the Partnership as is agreed to by the retiring and remaining or substituted General Partners.  Any remaining Interest in the Partnership of the retiring General Partner shall become a limited partnership Interest and the retiring General Partner shall be deemed a Limited Partner.

4.10   Removal of a General Partner

The General Partner may be removed as General Partner without its consent, for any breach of fiduciary duty, by vote of the Limited Partners, which removal shall be effective upon written notification of such action to the removed General Partner. Upon such removal, the Partnership shall be dissolved, provided, however, that the Partnership may be continued on the terms and conditions of this Agreement after the removal of a General Partner if, within 90 days after such dissolution of the Partnership, the Limited Partners consent to continue the Partnership, designate in writing one or more substituted General Partners, and at least one designee consents to become a substituted General Partner and be bound by all the terms and conditions of this Agreement.  Any remaining Interest in the Partnership of the removed General Partner shall become a limited partnership Interest and the removed General Partner shall be deemed a Limited Partner.

10

## ARTICLE V

## POWERS

5.01   Powers

The General Partner on behalf of the Partners shall have all authority, rights and powers generally conferred by law, and shall have all the authority, rights and powers which it deems necessary or appropriate to effect the purposes of the Partnership, including, by way of illustration but not by way of limitation, the following:

(a) 1.   To invest and reinvest in stocks, bonds, puts, calls, options, notes or other evidences of indebtedness or ownership (including but not limited to shares in investment trusts), whether unsecured or secured by mortgages on real or personal property wherever situated or other securities or investments and in any property, real or personal, foreign or domestic.

2.   To acquire, hold, sell, transfer, assign, lease or otherwise deal with any real, personal or mixed property, interest therein or appurtenance thereto.

3.   To sell, convert, redeem, exchange, or otherwise dispose of, any real or personal property, at public or private sale, for cash or upon credit, with or without security.

(b)   To borrow money and, if security is required therefor, to mortgage or subject to any other security device any portion of the assets of the Partnership, to obtain replacements of any mortgage or other security device, and to prepay, in whole or in part, refinance, increase, modify, consolidate or extend any mortgage or other security device.

(c)   To purchase, at Partnership expense, liability and other insurance to protect the Partnership business and property.

(d) 1.   Subject to Section 4.08, to employ, contract and deal with, from time to time, persons, firms or corporations, in connection with the management and operation of the Partnership business, including without limitation, contractors, agents, brokers, accountants, and attorneys and such other persons, firms or corporations as the General Partner may designate and on such terms as the General Partner shall determine.

2.   To enter into contracts with one or more individuals, firms, associations, and/or corporations, in such form as the General Partner shall determine

11

including, but not limited to, contracts for the furnishing of investment advisory services and contracts for opening discretionary accounts granting to such individuals, firms, associations and/or corporations the authority to purchase, sell and otherwise deal in securities and to exercise all of the powers granted hereunder, with respect to the investment of the assets of the Partnership.

(e)   To place record title to, or the right to use, Partnership assets in the name or names of a nominee or nominees, or trustee or trustees, for any purpose convenient or beneficial to the Partnership.

(f)   To establish reserve funds from revenues of the Partnership to provide for operations, maintenance, repair, capital improvement, replacement, contingencies or any other purpose deemed necessary or appropriate by the Partners.

(g) 1.   To bring, defend, pay, collect, compromise, arbitrate, resort to legal action, or otherwise adjust claims or demands of or against the Partnership.

2.   To join in or oppose any reorganization, recapitalization, consolidation or merger, or any plan therefor, or any lease, mortgage or sale of the property of any organization the securities of which are owned by the Partnership; to pay any assessments, charge or compensation specified in any plan; to deposit any property with any committee or depositary.

3.   To exercise or sell any conversion or subscription right appurtenant to any stock, security or other property held by the Partnership.

(h)   To pay as a Partnership expense any and all costs or expenses associated with the formation, development, organization and operation of the Partnership.

(i)   To deposit, withdraw, invest, pay, retain, and distribute the Partnership's funds in a manner consistent with the provisions of this Agreement.

(j)   To execute, acknowledge and deliver any and all instruments to effectuate the foregoing, or without limitation, to effectuate any valid business purpose of the Partnership.

(k)   To make loans of Partnership funds, whether secured or unsecured, on such terms and to such borrowers as the General Partner determine in their sole discretion.

12

20

## ARTICLE VI

## RIGHTS AND OBLIGATIONS OF LIMITED PARTNERS

6.01   Management of Business

     No Limited Partner shall take part in the management or control of the business of the Partnership or act on behalf of the Partnership.

6.02   Outside Activities

     Nothing in this Agreement shall be deemed to prohibit any Limited Partner from engaging in or owning an interest in other business ventures of every kind and description, including but not limited to the development, ownership or management of real estate, whether or not the Partnership also has an interest therein, and neither the Partnership nor any of the Partners shall have any rights by virtue of this Agreement in such independent business ventures or to the income or profits derived the reform.

6.03   Liabilities of Limited Partners

     The Limited Partners as such shall have no personal liability with respect to liabilities and obligations of the Partnership.

## ARTICLE VII

## TRANSFER OF INTERESTS

7.01   Interest of General Partner

     The property rights of the General Partner in the Partnership, as defined by Section of the Partnership Law of the Commonwealth of Pennsylvania, may be transferred or assigned to any person or entity as the General Partner deems appropriate.

7.02   Interests of Limited Partners

    (i)    The interest in the Partnership of a Limited Partner ("Partnership Interest") or any portion thereof, may be sold, subject to the provisions of paragraph (ii), provided that the purchaser shall deliver to the General Partner:

        (1)    An agreement, in a form satisfactory to the General Partner, to be bound by this Agreement;

13

21

(2)  A power of attorney, substantially identical to that contained in Section 1.06; and

(3)  Such other instruments or documents as the General Partner may reasonably require in order to effect the substitution of such person as a Substituted Limited Partner pursuant to Section 7.05.

(ii)  If a Limited Partner desires to sell his Partnership Interest ("Offeror Partner"), he shall not consummate such sale unless and until he shall have offered to sell his Partnership Interest to the other Limited Partners and the General Partner and the following first refusal rights shall have terminated:

(a)  The Offeror Partner shall give the Partnership and all other Limited Partners and the General Partner notice of his desire to sell his Partnership Interest. Such notice shall be mailed to the Partnership and the other Limited Partners and the General Partner simultaneously.  For thirty (30) days after the date of the mailing of the notice, each other Limited Partner shall have the right to purchase at the price and on the terms specified in Sections 7.03 and 7.04 such part of the Offeror Partner's Partnership Interest in proportion to the relative profit-sharing percentages of the Limited Partners exercising the right to purchase as of the date of the notice. Such right to purchase may be exercised by the other Limited Partners by mailing a notice of intent to purchase to the Partnership and the Offeror Partner within the thirty (30) day period.

(b)  If, at the end of the thirty (30) day period, the other Limited Partners have not exercised their right to purchase the entire Partnership Interest, then the General Partner shall have the option to purchase the remaining portion of the Partnership Interest, or the entire Partnership Interest, as the case may be, of the Offeror Partner at the price and on the terms specified in Sections 7.03 and 7.04. Such right to purchase may be exercised by the General Partner by mailing a notice of intent to purchase to the Partnership and the Offeror Partner within twenty (20) days after expiration of the thirty (30) day period referred to in the preceding paragraph.

(c)  If some or all of the other Limited Partners and General Partner exercise their rights to purchase and such exercise results in an agreement to purchase the entire Partnership Interest of the Offeror Partner, then the sale of the Partnership Interest shall be

14

consummated within ten (10) days after the other Limited Partners and General Partner have exercised their rights, at a time and place designated by the General Partner. If the other Limited Partners and General Partners do not agree to purchase the entire Partnership Interest of the Offeror Partner, then the Offeror Partner shall be free to sell his entire Partnership Interest to a third party, provided however that as a condition of such sale, such third party thereupon executes a written consent to be bound by the terms and provisions of this Agreement as a Limited Partner.

7.03   Purchase Price

In the event of a sale of a Partner's interest hereunder pursuant to the provisions of this Article, the purchase price of said interest shall be the book value of the Offeror Partner's capital account as determined from the balance sheet of the Partnership filed as part of the Partnership's federal income tax return for the calendar year immediately preceding the calendar year in which the notice to sell is received pursuant to Section 7.02(ii).

7.04   Payment of Purchase Price

(a)   In the case of a purchase of a Partnership interest pursuant to this Article, the purchase price shall be paid, commencing ninety (90) days after exercise of the option pursuant to Section 7.02, in sixty (60) equal, consecutive monthly installments. Said installments shall be evidenced by a non-negotiable promissory note made by the purchasing Partners payable to the selling Partner. Said note shall provide for interest due and payable with each installment of principal computed on the unpaid principal balance at a rate equal to the greater of (1) ten percent (10%) per annum or (2) one hundred percent (100%) of the "applicable Federal rate" determined as of the date the option to purchase is exercised in accordance with Section 1274(d) of the Internal Revenue Code (notwithstanding the provisions of Section 1274(c)(3)), and shall provide for the acceleration of the due date of all unpaid installments in the event of a default for a period of thirty (30) days in the payment of any installment of principal or interest when due. The maker shall have the right to prepay said note in whole or in part at any time without notice or penalty.

(b)   Upon the payment of the purchase price to the selling Partner, such selling Partner shall execute and deliver to the purchasing Partners all documents reasonably required to evidence such purchase including, but not limited to, deeds, bills of sale, and releases of estate tax liens, and all rights of the selling Partner in the Partnership and in its property and

15

23

assets shall thereafter terminate. Simultaneously, the purchasing Partners shall deliver to the selling Partner an agreement indemnifying the seller against any liabilities of the Partnership.

7.05   Substituted Limited Partners

A purchaser of the Partnership Interest of a Limited Partner pursuant to sale in all respects in compliance with Section 7.02 shall be admitted as a Substituted Limited Partner.

7.08   Permitted Transfers

Subject to the provisions of Section 8.01, any Limited Partner may transfer his interest in the Partnership by gift or bequest to his spouse or issue or to a trust for the benefit of his issue (referred to as "Permitted Transferee") provided that any such spouse or issue is a Limited Partner and further provided that as a condition of such transfer the Permitted Transferee executes a written consent to be bound by the terms and provisions of this Agreement as a Limited Partner.

## ARTICLE VIII

## DEATH OF LIMITED PARTNER

8.01   Effect of Death of Limited Partner

(a)   If a Limited Partner dies during the term of the Partnership, the Partnership shall not terminate, but the personal representative of the deceased Limited Partner shall immediately succeed to the interest of the deceased Limited Partner in the Partnership, and such personal representative shall have the same rights and obligations in the Partnership as the deceased limited Partner would have had, had he survived.

(b)(1)   Notwithstanding the provisions of the preceding paragraph (a), upon the death of a Limited Partner, the surviving Limited Partners shall have the option, to be exercised in writing within sixty (60) days after the date the deceased Limited Partner's estate representative is qualified, pro rata, based on the relative profit-sharing percentages of the Limited Partners who exercise such option, to purchase the entire Partnership Interest of such decedent, and, in the event the surviving Limited Partners exercise such option, the estate representative of the deceased Limited Partner shall sell, and the surviving Limited Partners exercising such option shall purchase, the deceased Limited Partner's

16

entire interest in the Partnership. The purchase price shall be determined in accordance with the provisions of Section 8.01(b)(iii) and shall be paid on the terms specified in Section 8.01(b)(iv) hereof.

(ii) If, at the end of the sixty (60) day period, the other Limited Partners have not exercised their right to purchase the entire Partnership Interest, then the General Partner shall have the option to purchase the remaining portion of the Partnership Interest or the entire Partnership interest, as the case may be, of the deceased Limited Partner. Such right to purchase may be exercised by such purchaser by mailing a notice of interest to purchase to the deceased Limited Partner's estate representative within twenty (20) days after expiration of the sixty (60) day period referred to in the preceding paragraph.

(iii) The purchase price shall be the book value of the decedent's capital account as determined from the balance sheet of the Partnership filed as part of the Partnership's federal income tax return for the calendar year immediately preceding the date of death.

(iv) The purchase price shall be payable in sixty (60) equal, consecutive monthly installments commencing thirty (30) days after exercise of the option to purchase. Said installments shall be evidenced by an unsecured non-negotiable promissory note made by each purchaser payable to the deceased Limited Partner's estate representative. Said note shall provide for interest due and payable with each installment of principal computed on the unpaid principal balance at a rate equal to the greater of (1) ten percent (10%) per annum or (2) one hundred percent (100%) of the "applicable Federal rate" as determined as of the date the option to purchase is exercised in accordance with Section 1274(d) of the Internal Revenue Code (notwithstanding the provisions of Section 1274(c)(3)), and shall provide for the acceleration of the due date of all unpaid installments owed by all purchasers in the event of a default for a period of thirty (30) days in the payment of any installment of principal or interest when due from any purchaser. Each maker shall have the right to prepay said note in whole or in part at any time without notice or penalty.

(v) In the event that the options to purchase are not exercised, the Partnership Interest of the deceased Limited Partner shall be transferred to a Permitted Transferee as provided in Section 7.08.

17

25

## ARTICLE IX

## DISSOLUTION AND LIQUIDATION

### 9.01   Dissolution of Partnership

The Partnership shall be dissolved upon the happening of any of the events specified in Section 1.03. Upon any such dissolution, a final accounting will be had. Each of the Partners will be credited with the amount of his capital account and also with his share of the Partnership income less deductions therefrom for losses or withdrawals, as reflected by his income account on the books of the Partnership, together with his share of any remaining profits not theretofore credited to his account or less his share of any losses not theretofore charged to him, all computed up to the date of dissolution.

### 9.02   Payments in Liquidation

Upon the dissolution of the Partnership, the General Partner (which term, for the purposes of this Section, shall include the trustee, receiver or successor thereof) shall cause the cancellation of the Partnership Certificate and shall liquidate the assets of the Partnership and shall apply and distribute the proceeds of such liquidation in the following order of priority:

(a)   To the payments of debts and liabilities of the Partnership (other than those to Partners) and the expenses of liquidation;

(b)   To the setting up of such reserves as the General Partner may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership arising out of or in connection with the Partnership; provided that any such reserves shall be paid over by the General Partner to a person (if an individual, not one in the employ of any Partner), as escrowee, to be held by such person (or designated successor) for the purpose of disbursing such reserves in payment of any of the aforementioned contingencies and, at the expiration of such period as the General Partner shall deem advisable, to distribute the balance thereafter remaining in the manner hereinafter provided;

(c)   To the repayment of any advances that may have been made by any of the Partners to the Partnership, but if the amount available for such repayment shall be insufficient, then pro rata in accordance with the amounts of such advances;

(d)   To the Partners, pro rata, in amounts equivalent to the amounts of their respective positive Capital Accounts on the date of distribution in compliance with Treasury Regulation Section 1.704-1(b)(2)(ii)(b)(2);

18

and (e) To the payment to the Partners, pro rata in accordance with their respective then applicable profit percentages.  In the event a Partner's Capital Account is less than zero, the Partner shall make a Capital Contribution to the Partnership in the amount necessary to restore his Capital Account to zero in compliance with Treasury Regulation Section 1.704-1 (b)(2)(ii)(b)(3), and the amount so contributed shall be treated as proceeds from the liquidation of Partnership assets for purposes of, and shall be distributed pursuant to, this Section 9.02. However, such obligation to make restoration of a deficit Capital Account balance shall not apply to the extent that the allocation of "Minimum Gain" pursuant to Section 3.03 or the special allocations pursuant to Section 3.04 hereof renders that obligation unnecessary in order for any allocation of Loss to have substantial economic effect pursuant to Treasury Regulation Section 1.704-1(b).  If, in the judgment of the General Partner, it shall be impractical to liquidate part or all the assets of the Partnership, then assets which they deem not suitable for liquidation may be distributed to the Partners in kind, subject to the order of priority set forth above and, further, subject to such conditions relating to the management and disposition of the assets distributed as they deem reasonable and equitable.

9.03    Partition

Each of the Partners hereby irrevocably waives any and all rights that he may have to maintain any action for partition with respect to his undivided interest in Partnership assets whether as a Partner, or as a tenant in common in the event of a dissolution of the Partnership, or to compel any sale thereof under any applicable laws now existing or hereafter enacted.

## ARTICLE X

## NOTICES

10.01   Manner of Giving Notice

All notice required by this Agreement to be given by a Partner will be given by mailing the same in a sealed envelope, first class mail, postage prepaid and either registered or certified addressed to the Partnership at its principal place of business and to the Partners or their legal representatives at their respective addresses as they appear on the books of the Partnership, or to such other address as may from time to time be designated by notice given in the manner provided in this Article, with copy to Laurence Keiser, Esq., 1025 Westchester Avenue, White Plains, NY, 10604.

10.02  Date Deemed Given

Each such notice will be dated as of the date of its mailing, and if mailed in the United States, will be deemed given, delivered and completed on the date of mailing thereof; if mailed outside the United States, such notice will be deemed given, delivered completed on the date of receipt.

## ARTICLE XI

## MISCELLANEOUS

11.01  Wavier

No failure by any Partner to insist upon the strict performance of any covenant, duty, agreement, or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute a waiver of any such breach or of such covenant, agreement, term, or condition.  Any Partner by notice pursuant to Section 9.01 may, but shall be under no obligation to, waive any of his rights or any conditions to his obligations hereunder, or any duty, obligation or covenant of any other Partner. No waiver shall affect or alter the remainder of this Agreement but each and every covenant, agreement term, and condition of this Agreement shall continue in full force and effect with respect to any other then existing or subsequent breach thereof.

11.02  Governing Law and Amendment

This Agreement is made pursuant to, and will be governed by and construed in accordance with, the laws of the Commonwealth of Pennsylvania.  It sets forth the entire agreement among the Partners concerning the subject matter thereof, and any amendment or discharge will be made only in writing and signed by all Partners.

11.03  Binding Effect

This Agreement will bind and benefit the Partners and their heirs, successors, legal representatives and assigns.

11.04  Titles

The titles of Articles and Sections of this Agreement are inserted only for convenience and ease of reference, and will not be construed as a part of this Agreement.

11.05  Remedies

The rights and remedies of the Partners shall not be mutually exclusive, and the exercise of one or more of the provisions hereof shall not preclude the exercise of any other

20

28

provisions hereof.  Each of the Partners confirms that damages at law may be an inadequate remedy for a breach or threatened breach of any provision hereof.  The respective rights and obligations hereunder shall be enforceable by specific performance, injunction, or other equitable remedy, but nothing herein contained is intended to, or shall limit or affect any rights at law or by statute or otherwise of any party aggrieved as against the other Partner for a breach or threatened breach of any provision hereof, it being the intention of this Section to make clear the agreement of the Partners that the respective rights and obligations of the Partners hereunder shall be enforceable in equity as well as at law or otherwise.

11.06  Tax Elections

In the event of a transfer of all or part of a Partnership interest, the Partnership shall elect pursuant to Section 754 of the Internal Revenue Code to adjust the basis of Partnership property. If any Partner transfers all or part of his Partnership interest, any basis adjustment from such transfer, whether made under Section 754 of the Internal Revenue Code or otherwise, shall be allocated solely to the transferee.

11.07  Tax Matters Partner

The General Partner then serving shall be the Tax Matters Partner of the Partnership as defined in Section 6231 (a)(7) of the Internal Revenue Code.

11.08  (a)    Books of Account

At all times during the continuance of the Partnership, the General Partner shall keep or cause to be kept, in accordance with generally accepted accounting principles, full and true books of account in which shall be entered fully and accurately all transactions of the Partnership.

(b)    Inspection

All of the books of account of the Partnership, together with an executed copy of the Partnership Certificate, and of such other instruments as the Partners may from time to time execute, shall at all times be maintained at the principal office of the Partnership.

(c)    Fiscal Year

The fiscal year of the Partnership shall end on December 31 in each year.

(d)    Annual Financial Reports

The General Partner shall deliver to each Partners within ninety (30)

21

days after the expiration of each fiscal year, a Financial Report of the Partnership including a Balance Sheet and Profit and Loss Statement, and that partners Form 1065 Schedule K-1. All such statements shall be prepared in accordance with generally accepted accounting principles by such independent certified public accountants as the General Partner shall, in its sole judgement, employ for the purpose of auditing the accounts of the Partnership.

11.09   Counterparts.  This Agreement may be executed in counterparts, all of which taken together shall constitute one original document.

[THIS SPACE INTENTIONALLY LEFT BLANK]

22

30

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

GENERAL PARTNER

_____
Lee Blatt

LIMITED PARTNERS

_____
Allyson Gerber

_____
Randy Rossignol

_____
Patrick Rossignol

_____
Henry Rossignol

_____
Max Rossignol

_____
John Thonet

_____
Kathi Thonet

_____
Hannah Thonet

_____
Rebecca Thonet

23

31

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.


LIMITED PARTNERS

_____
Sydelle Blatt

## SCHEDULE A

Capital Contribution

### GENERAL PARTNER

Lee Blatt                                $ 15,000

### LIMITED PARTNERS

| | |
|---|---|
| Allyson Gerber | $ 120,000 |
| Randy Rossignol | $ 75,000 |
| Patrick Rossignol | $ 75,000 |
| Henry Rossignol | $ 75,000 |
| Max Rossignol | $ 75,000 |
| Kathi Thonet | $ 75,000 |
| John Thonet | $ 75,000 |
| Hannah Thonet | $ 75,000 |
| Rebecca Thonet | $ 75,000 |
| Sydelle Blatt | $ 15,000 |

750,000

25

## SCHEDULE B

### Allocation of Profits and Losses

|  | Percentage of Profit or Loss |
|---|---|
| **GENERAL PARTNER** | |
| Lee Blatt | 2% |

| **LIMITED PARTNERS** | |
|---|---|
| Allyson Gerber | 16% |
| Randy Rossignol | 10% |
| Patrick Rossignol | 10% |
| Henry Rossignol | 10% |
| Max Rossignol | 10% |
| Kathi Thonet | 10% |
| John Thonet | 10% |
| Hannah Thonet | 10% |
| Rebecca Thonet | 10% |
| Sydelle Blatt | 2% |

34